# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Adrian Calleros,

        Plaintiff,

                                    Civ. No. 12-2120 (RHK/AJB)
                                    **MEMORANDUM OPINION
AND ORDER**

v.

FSI International, Inc., *et al.*,

        Defendants.

---

Shawn M. Perry, Perry & Perry, PLLP, Minneapolis, Minnesota, Juan E. Monteverde, Faruqi & Faruqi, LLP, New York, New York, for Plaintiff.

Wendy J. Wildung, Leif T. Simonson, Justin P. Krypel, Jeffrey P. Justman, Faegre Baker Daniels LLP, Minneapolis, Minnesota, for Defendants FSI International, Inc., Donald S. Mitchell, James A. Bernards, Terrence W. Glarner, Stan K. Yarbro, and David V. Smith.

Richard G. Wilson, Emily M. Rome, Maslon Edelman Borman & Brand, LLP, Minneapolis, Minnesota, Michael L. Davitt, Thomas R. Jackson, Jones Day, Dallas, Texas, for Defendants RB Merger Corp. and Tokyo Electron Limited.

---

## INTRODUCTION

       Plaintiff Adrian Calleros, a shareholder in Defendant FSI International, Inc. ("FSI"), alleges in this action that FSI and certain of its officers and directors have violated the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*, and breached their fiduciary duties by making incomplete and misleading disclosures in connection with a proposed tender offer by, and subsequent merger with, Defendant Tokyo Electron Limited ("TEL"). Presently before the Court is Calleros's

Motion for a Temporary Restraining Order (Doc. No. 23). For the reasons that follow, the Motion will be denied.[1]

## BACKGROUND

FSI is a Minnesota corporation that supplies surface conditioning and cooling technology to companies engaged in microelectronics manufacturing. (Compl. ¶ 35.) On August 13, 2012, FSI and TEL, a Japanese corporation, issued a joint press release announcing that they had reached an agreement for TEL to acquire FSI. (Id. ¶ 2.) Pursuant to that agreement, TEL – through its wholly owned subsidiary, Defendant RB Merger Corp. ("RB") – would make a tender offer of $6.20 per share of FSI stock.[2] (Id.) Following the stock purchase, RB would be merged into FSI and it (FSI) would become a wholly owned subsidiary of TEL. (Id. ¶ 3.) The tender offer is scheduled to expire on September 24, 2012. (Id. ¶ 5.)

Litigation quickly ensued following the press release.[3] Indeed, four days later, a putative class-action lawsuit was filed by an FSI shareholder in state District Court in

---

[1] The following constitutes the Court's findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 65.

[2] A "tender offer" is a "broad solicitation by a company or a third party to purchase a substantial percentage of a company's . . . shares . . . for a limited period of time. The offer is at a fixed price, usually at a premium over the current market price, and is customarily contingent on shareholders tendering a fixed number of their shares or units." http://www.sec.gov/answers/tender.htm (last visited Sept. 18, 2012). FSI's stock is traded on the NASDAQ exchange, and TEL's tender-offer price represented a 53.5% premium over the stock's closing price ($4.04) on the last trading day before the agreement was announced.

[3] Unfortunately, such "races to the courthouse" are common in securities cases and were a key reason for the enactment of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737. See H.R. Conf. Rep. 104-369, at *27 (Nov. 28, 1995) ("House and Senate Committee hearings on securities litigation reform demonstrated the need to reform abuses

Carver County, Minnesota, the location of FSI's headquarters. (See Doc. No. 12 Ex. 3.) That lawsuit alleges, *inter alia*, that FSI's officers and directors violated their fiduciary duties by making incomplete and misleading disclosures in connection with the proposed transaction. Two additional putative class actions, asserting similar claims, were filed in the Carver County District Court on August 20 and September 10, respectively. (See id. Exs. 4-5.)

Calleros, too, raced to the courthouse, filing a Complaint against the instant Defendants on August 22, 2012, only nine days after the press release. But Calleros raced to the wrong courthouse, apparently on the mistaken belief that FSI is a Delaware corporation – he commenced his action in the Delaware Chancery Court. After being informed of his error, he voluntarily dismissed that case. He then filed the instant action on August 28, 2012, alleging breaches of fiduciary duties similar to the aforementioned state-court cases. Yet, he also added claims under the Exchange Act based on purported omissions from a document FSI had filed with the Securities and Exchange Commission known as a Schedule 14D-9 or "Recommendation Statement." See 17 C.F.R. § 240.14d-101. This 46-page, single-spaced document, together with a slew of exhibits, provided a bevy of information regarding FSI's business operations, the proposed transaction, and the reasons FSI's Board of Directors had opted to approve it. (Doc. No. 12 Ex. 8.) The document also contained a unanimous recommendation from the Board that shareholders tender their shares pursuant to the tender offer. Lastly, it contained pages of detailed

---

involving the use of 'professional plaintiffs' and the race to the courthouse to file the complaint.").

financial analyses by Barclays Capital, Inc. ("Barclays"), FSI's outside financial advisor, as well as Barclays's opinion (with supporting data) that $6.20 per share represented a fair price for FSI's stock.

The gravamen of Calleros's claims in this action is that FSI's shareholders have not been provided sufficient information to determine whether the tender-offer price represents a fair offer. (See Compl. ¶ 57 (asserting that the "misrepresentations and omissions in the Recommendation Statement are material . . . and . . . will . . . deprive[] [Calleros] of his entitlement to make a fully informed decision" on the tender offer).)[4] As a result, he filed the instant Motion on September 13, 2012. Arguing that the Recommendation Statement is "wrought with material deficiencies and fails to provide FSI shareholders with the necessary information required by law to make an informed decision about the Tender Offer" (Pl. Mem. at 2), he seeks a temporary restraining order "enjoin[ing] the consummation of the transaction until at least adequate disclosures are made" (id. at 17). Defendants filed their Memorandum in Opposition to the Motion on September 18, 2012. The Motion is now ripe for disposition.

**STANDARD OF DECISION**

As the Supreme Court recently emphasized, injunctive relief "is an extraordinary remedy never awarded as a matter of right." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008). This Court must consider four factors to determine whether such

[4] Despite this assertion, Calleros also alleges that the tender-offer price is too low. (See Compl. ¶ 42 ("The $6.20 per share consideration offered in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of FSI's common stock is materially in excess of the amount offered in the Proposed Transaction.").)

relief is warranted here:  (1) Calleros's likelihood of success on the merits; (2) the threat of irreparable harm in the absence of injunctive relief; (3) the balance between that harm and the harm injunctive relief would cause Defendants; and (4) the public interest.  E.g., Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (quoting Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*)).[5]  When analyzing these factors, the Court must "flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene."  Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 601 (8th Cir. 1999).  The burden of establishing that these factors weigh in favor of relief lies with Calleros.  Watkins, 346 F.3d at 844.

## ANALYSIS

Calleros's Motion must be denied for two independently sufficient reasons: (1) the Court should abstain in favor of the state-court litigation and (2) Calleros has failed to show irreparable harm absent injunctive relief.

## I.     Abstention

Tellingly absent from Calleros's Motion papers is *any* reference to the state-court cases raising nearly identical issues to the instant action.  Indeed, those cases allege, among other things, that FSI's officers and directors breached their fiduciary duties by failing to "provide[] full and complete disclosure[s]" concerning the transaction, thereby

---

[5] Although Dataphase concerned a preliminary injunction, the same standard applies to temporary restraining orders.  See, e.g., S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of Dataphase factors to motion for temporary restraining order).

"depriv[ing]" the plaintiffs "of their ability to make intelligent and informed decisions about whether to tender their shares." (Doc. No. 12 Ex. 4, ¶¶ 92-93; accord id. Ex. 3, ¶¶ 92-93; id. Ex. 5, ¶¶ 92-93.) Moreover, the docket in those actions (which have been consolidated) reflects that the plaintiffs have moved for a temporary restraining order enjoining the proposed transaction, similar to that sought by Calleros here, which is scheduled to be heard on September 19, 2012.

Putting aside whether Calleros's counsel have violated their duty of candor to the Court,[6] the related litigation raises the specter of duplication of judicial effort and inconsistent results. And it is well-settled that when such possibilities arise, a federal court "may abstain from exercising jurisdiction in favor of [the] concurrent and parallel state proceedings where doing so would serve the interests of 'wise judicial administration, giving regard to the conservation of judicial resources.'" Giles v. ICG, Inc., 789 F. Supp. 2d 706, 712 (S.D. W. Va. 2011) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976)). In the Court's view, abstention is appropriate here.

## A.    Parallel proceedings

A threshold issue when considering Colorado River abstention is whether the pending state and federal proceedings are parallel. Fru-Con Constr. Corp. v. Controlled

---

[6] The Court is troubled by the failure to mention the related state-court litigation. "Attorneys, as officers of the court, have the responsibility to present the record with accuracy and candor." Pinkham v. Sara Lee Corp., 983 F.2d 824, 833 (8th Cir. 1992); accord, e.g., Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Every lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, *he always has a duty of candor to the tribunal*.") (emphasis added). It seems fairly apparent that counsel have flouted that obligation here.

Air, Inc., 574 F.3d 527, 535 (8th Cir. 2009).  State and federal cases are parallel when "a substantial similarity exist[s] between" them, which occurs when there is "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court."  Id.  While the standard is one of "substantial similarity," the proceedings need not be *identical*, and the presence of additional parties or issues "does not necessarily preclude a finding that [proceedings] are parallel."  Bank of Okla., N.A. v. Tharaldson Motels II, Inc., 671 F. Supp. 2d 1058, 1062 (D.N.D. 2009); accord, e.g., In re Novell, Inc. Shareholder Litig., Civ. A. No. 10-12076, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012) ("[T]he case law does not require absolute identity of the parties and issues, only substantial similarity.").

Substantial similarity exists here.  The factual basis for the claims in the state cases and the claims asserted here is the same, essentially charging FSI's Board and senior management with failing to make adequate disclosures to shareholders in connection with the tender offer, and all of the cases assert nearly identical claims for breach of fiduciary duty.  The Complaint in each case seeks immediate injunctive relief halting the pending transaction.  The defendants are the same in every action, and the plaintiffs are individual owners of FSI stock purporting to act on behalf of a class of all FSI shareholders.  This is more than sufficient to establish parallelism.  See, e.g., In re Novell, 2012 WL 458500, at *7; In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008).

The fact that Calleros also asserts in this action claims under the Exchange Act – which are absent from the state cases and are subject to exclusive federal jurisdiction –

does not change this result.  This is because disposition of the state claims is "substantially likely" to dispose of the Exchange Act claims.

In order to resolve the claims asserted in the state actions, the Carver County District Court will be required to determine whether FSI's officers and directors made material misrepresentations and/or omissions in the Recommendation Statement.  See, e.g., Klein v. First Edina Nat'l Bank, 196 N.W.2d 619, 622 (Minn. 1972) (*per curiam*) ("One who stands in a . . . fiduciary relation to the other party to a transaction must disclose *material* facts.") (emphasis added); Sifferle v. Micom Corp., 384 N.W.2d 503, 509 (Minn. Ct. App. 1986); Rupp v. Thompson, No. C5-03-347, 2004 WL 3563775, at *9 n.3 (Minn. Dist. Ct. Mar. 17, 2004).[7]  Indeed, this is precisely what the Complaints in the state-court cases allege:  shareholders were not provided with "full and complete disclosure concerning matters that a reasonable shareholder would deem important under the circumstances."  (Doc. No. 12 Ex. 3, ¶ 92.)  That echoes the "materiality" standard articulated by the Supreme Court for disclosure claims under the Exchange Act.  See TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.").  Hence, the state cases will necessarily adjudicate the very issue on which Calleros's Exchange Act claims turn.

In re Novell addressed the same situation.  There, the plaintiffs asserted claims for breach of fiduciary duty under state law and violations of the Exchange Act, all

_____

[7] Under the "internal affairs" doctrine, fiduciary-duty claims against FSI's directors are governed by Minnesota law because FSI is a Minnesota corporation.  See, e.g., Atherton v. FDIC, 519 U.S. 213, 223-24 (1997).

predicated on material misstatements and omissions by corporate directors in a proxy statement. At the time the plaintiffs filed their action, substantially similar litigation was pending in Delaware state court. <u>In re Novell</u> found the state and federal cases parallel and abstained under <u>Colorado River</u>:

> Plaintiffs argue that [abstention is inappropriate] because the [Exchange] Act claims must be adjudicated in federal court regardless of the outcome of the Delaware action. They insist that the Delaware action can never fully dispose of the [Exchange] Act claims because federal and state law regarding disclosure in connection with proxy solicitations are not identical.
>
> Their argument misses the point. Although federal disclosure law may not parallel that under Delaware common law in every respect, both require proof that an alleged misstatement or omission was material. Crucially, the Delaware courts recognize the same standard of 'materiality' as the Supreme Court recognized for [Exchange Act] claims in <u>TSC Industries Inc. v. Northway, Inc.</u>, 426 U.S. 438, 445–49 (1976). Where both this court and the Delaware court must determine the materiality of any alleged misrepresentation or omission on the same set of facts using the exact same standard, . . . the issues involved in these cases, even though they stem from different sources of law, are substantially the same. It is therefore unnecessary for both courts to act upon these claims.
>
> Furthermore, a decision by the Delaware court could provide a predicate for collateral estoppel of plaintiffs' [Exchange] Act claims. . . . As the Supreme Court noted in <u>Matsushita Elec. Indus. Co., Ltd. v. Epstein</u>, 516 U.S. 367, 383–84 (1996): Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions . . . [and] said nothing to modify the background rule that where a state-court judgment precedes that of a federal court, the federal court must give full faith and credit to the state court judgment.

2012 WL 458500, at *8 (internal quotation marks and citations omitted); <u>accord, e.g.</u>, <u>Giles</u>, 789 F. Supp. 2d at 712-13 (state and federal cases alleging *inter alia* misleading disclosures in proxy statement and seeking temporary injunctive relief halting proposed transaction were parallel despite Exchange Act claim in federal action); <u>McCreary v.</u>

Celera Corp., No. 11-1618, 2011 WL 1399263, at *3 (N.D. Cal. Apr. 13, 2011) (same);

Int'l Jensen Inc. v. Emerson Radio Corp., No. 96-C-2816, 1996 WL 494273, at *2-5

(N.D. Ill. Aug. 27, 1996). At bottom, the cases are parallel.

### B. The Colorado River factors favor a stay

"Six non-exhaustive factors have been developed to determine whether, in the case

of parallel state and federal proceedings, exceptional circumstances warrant abstention."

Fru-Con, 574 F.3d at 534 (citation omitted). Those six factors are (1) whether there is a

*res* over which one court has established jurisdiction, (2) the inconvenience of the federal

forum, (3) whether maintaining separate actions may result in piecemeal litigation,

(4) which case has priority, placing "greater emphasis" not on which case was first filed

but rather the relative progress made in the cases, (5) whether state or federal law

controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Id. The Supreme Court has made clear that the third factor, avoidance of piecemeal

litigation, is "predominant." Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d

920, 926-27 (8th Cir. 2006) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 16, 21 (1983)). Indeed, the primary policy undergirding Colorado

River abstention is judicial efficiency. Federated Rural Elec. Ins. Corp. v. Ark. Elec.

Coops., Inc., 48 F.3d 294, 298 n.4 (8th Cir. 1995).

These factors do not provide a "mechanical checklist," but rather outline for

district courts "important factors [to] apply in a given case." Moses H. Cone, 460 U.S. at

16. Although certain of these factors are either neutral or inapplicable here (such as

factor 1), in totality they lead the Court to conclude that abstention is warranted.

First, and foremost, there can be little doubt that abstaining would avoid piecemeal litigation while still protecting the parties' rights. The claims asserted in the state actions – for breach of fiduciary duty – are also asserted in this case and overlap in substantial measure with the Exchange Act claims. "Requiring the defendants to defend these lawsuits separately could inject a great deal of uncertainty into the deal's already-expedited time line," and Defendants "could face duplicative discovery requests and markedly different general litigation schedules in each court," Giles, 789 F. Supp. 2d at 713, as well as "the potential for harmful and inconsistent rulings," In re Novell, 2012 WL 458500, at *8. Such concerns are "heightened in this case due to the complexity of the litigation, the presence of class-action claims, and the need to proceed expeditiously to address the proposed merger." Krieger v. Atheros Commc'ns, Inc., 776 F. Supp. 2d 1053, 1062 (N.D. Cal. 2011).

Second, the state claims rest "entirely on interpretation and application of [Minnesota] law in which [Minnesota] courts have an important interest and expertise." In re Novell, 2012 WL 458500, at *8.

Third, this Court has no reason to believe that the Carver County District Court cannot (or will not) fairly and completely adjudicate the facts underlying the plaintiffs' claims.

Fourth, the state-court cases were filed before, and are more advanced than, this case; injunctive relief was sought in those cases in late August, well before the instant Motion was filed, and that application is scheduled to be heard on September 19, 2012, by the state court.

The foregoing demonstrates that the Colorado River factors weigh heavily on the abstention side of the scale. Accordingly, the Court concludes that abstention is appropriate under the circumstances here. See also Cohen v. Hillman, No. 1:10cv237, Hr'g Tr. at 14-15 (E.D. Va. Apr. 30, 2010) (granting stay of federal action asserting violations of Exchange Act and breach of fiduciary duty in favor of state fiduciary-duty action, as "the heart and soul of both pieces of litigation is the same").[8]

## II.      Irreparable harm

Even if the Court were inclined to consider Calleros's claims, it would deny his pending Motion because he has not shown he will be irreparably harmed absent a temporary restraining order. "The basis of injunctive relief in the federal courts has always been irreparable harm and the inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (*per curiam*) (quoting Beacon Theaters, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)). The failure to show irreparable harm is "an independently sufficient ground upon which to deny" an

---

[8] Some cases, including Giles and In re Countrywide, have granted *partial* stays in similar circumstances, concluding that Exchange Act claims, which are subject to exclusive federal jurisdiction, cannot be stayed even when abstention over related fiduciary-duty claims is warranted. Others, including In re Novell and McCreary, have stayed *all* claims, including Exchange Act claims. Here, even if abstention over only *some* of Calleros's claims were appropriate, the Court could – and would – nevertheless exercise its "inherent authority" to stay this case pending resolution of the state cases. Apart from abstention, the Court enjoys the inherent power to stay proceedings before it, "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Kreditverein der Bank Austria Creditandstalt fur Niederosterreich und Bergenland v. Nejezchleba, 477 F.3d 942, 945 (8th Cir. 2007) (noting distinction between stay due to Colorado River abstention and stay under court's inherent power). A stay is appropriate to permit the state court, where jurisdiction first attached, to adjudicate the issues before this Court reaches them, and that adjudication may well have a significant impact on this case, for the reasons already discussed.

injection. <u>Watkins</u>, 346 F.3d at 844. Indeed, "in some cases, lack of irreparable injury is the factor that should begin and end the . . . analysis." <u>Planned Parenthood Minn., N.D., S.D. v. Rounds</u>, 530 F.3d 724, 732 n.5 (8th Cir. 2008) (*en banc*).[9]

Here, Calleros argues that he will be irreparably harmed absent Court intervention because he will be "forced to determine whether to tender [his] shares in support of the Proposed Transaction without all material information." (Pl. Mem. at 14.) Pointing to what he terms "particularly instructive" Delaware case law, he contends that the "threat of an uninformed stockholder vote" constitutes irreparable harm *per se*. (Id.) In essence, he asserts that there exists a presumption of irreparable harm when officers and directors have made misleading statements in connection with a tender offer. There are three key problems with this argument.

<u>First</u>, Calleros appears to acknowledge that he *already* possesses sufficient information to determine whether to tender his shares. Indeed, he expressly alleges in the Complaint that the tender-offer price is too low. (See Compl. ¶ 42 ("The $6.20 per share consideration offered in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of FSI's common stock is materially in excess of the amount offered in the Proposed Transaction.").) It is unclear why Calleros

_____

[9] As the Supreme Court emphasized just a few months after <u>Planned Parenthood</u>, lack of irreparable harm *must* end the analysis. <u>Winter</u>, 555 U.S. at 22. Prior to <u>Winter</u>, some courts, including the Eighth Circuit, had held that a "possibility" of irreparable harm might be sufficient to support preliminary injunctive relief. See <u>Kan. City S. Transp. Co. v. Teamsters Local Union No. 41</u>, 126 F.3d 1059, 1066 (8th Cir. 1997) (affirming preliminary injunction based upon "the possibility of irreparable harm if injunctive relief is not granted"); <u>see also</u> <u>Grocery Outlet Inc. v. Albertson's Inc.</u>, 497 F.3d 949, 951 (9th Cir. 2007) (*per curiam*). In <u>Winter</u>, the Supreme Court held that such a "'possibility' standard is too lenient." 555 U.S. at 22. A party seeking preliminary injunctive relief must instead show that "irreparable injury is *likely* in the absence of an injunction." <u>Id.</u> (emphasis in original).

feels he needs the extraordinary remedy of a temporary restraining order given the information he apparently already possesses.  See Davis v. Duncan Energy Partners L.P., 801 F. Supp. 2d 589, 597 (S.D. Tex. 2011) (noting there was no reason why, given the significant number and scope of alleged omissions in a document filed with the SEC, plaintiff needed expedited discovery to support motion for preliminary injunction enjoining the proposed transaction).

Second, it is questionable "whether it is . . . proper to presume irreparable harm after the decisions of the United States Supreme Court in eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93 (2006), and Winter."  City Cycle IP, LLC v. Caztek, Inc., Civ. No. 12-1285, 2012 WL 3656443, at *3 n.6 (D. Minn. Aug. 24, 2012) (Ericksen, J.). In eBay, the high Court overturned a long line of cases granting injunctions as a matter of course upon a showing of patent infringement – that is, without a showing of irreparable harm.  Although eBay was a patent case, its holding has been extended to other intellectual property cases, see, e.g., Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (applying eBay to a claim for copyright infringement), as well different categories of cases altogether, see, e.g., Byrd v. Aaron's, Inc., C.A. No. 11-101, 2011 WL 2672009, at *8 & n.6 (W.D. Pa. June 16, 2011) (Report & Recommendation of Baxter, M.J.) (no presumption of irreparable harm for defendant's violation of federal Wiretap Act), adopted, 2011 WL 2672204 (W.D. Pa. July 8, 2011).  The Court perceives no obvious reason why its reach should not similarly extend to this case.  Indeed, eBay rejected the application of categorical rules in injunction cases and instructed courts to consider "traditional equitable principles" when deciding whether to grant injunctive relief,

including whether the plaintiff has shown that "remedies available at law, such as monetary damages, are inadequate to compensate" him. 547 U.S. at 391-94.

Third, and perhaps most importantly, "nothing in [the] decisions cited by [Calleros] establishes a rule that preliminary relief is always required" for disclosure violations. La. Mun. Police Employees' Ret. Sys. v. Continental Res., Inc., __ F. Supp. 2d __, 2012 WL 3263710, at *12 (W.D. Okla. Aug. 9, 2012); accord, e.g., MONY Grp., Inc. v. Highfields Capital Mgmt., L.P., 368 F.3d 138, 147 (2d Cir. 2004) ("We decline to hold that a transaction influenced by noncompliance with the [disclosure provisions of the] securities laws *always* results in irreparable harm.") (emphasis in original); Gold Fields Ltd. v. Harmony Gold Mining Co., No. 04 Civ. 8767, 2004 WL 2710030, at *4 (S.D.N.Y. Nov. 23, 2004) (rejecting the contention that "virtually any tender offer involving allegedly misleading disclosures results in irreparable harm"). Notably, at least one Delaware court has declined to find irreparable harm despite a showing of likely success on the merits of a disclosure claim, undermining Calleros's contention that a hard-and-fast rule exists. See La. Mun. Police Employees' Ret. Sys. v. Crawford, 918 A.2d 1172, 1185 (Del. Ch. 2007).

Nor is irreparable harm obvious to the Court. When a shareholder asserts that he is being forced to tender his shares based on inadequate or misleading information, four possibilities exist: the shareholder "wrongly" opts to tender when, based on the undisclosed information, he would not have done so; the shareholder "wrongly" opts *not* to tender when he should have done so; the shareholder "correctly" opts to tender; or the shareholder "correctly" opts not to tender. In this Court's view, none of these scenarios

encompasses irreparable harm. Indeed, in the latter two cases, the shareholder suffers no harm whatsoever, let alone irreparable harm, because he chose a course of conduct consistent with the information he sought. In other words, the "correct" information would not have altered the shareholder's decision to tender (or to not tender) his shares. As for the remaining two scenarios, the Court perceives no reason why any harm to the shareholder could not be remedied with damages. Consider, for example, the stockholder who declines to tender his shares in response to a tender offer due to misinformation from company insiders when, if he had received accurate information, he would have opted to do so. The shareholder's harm in that situation is nothing more than the missed opportunity to sell his shares at the tender-offer price. It seems fairly obvious that such an individual could be made whole through damages equal to the tender-offer price per share. Similarly, there is no apparent reason why a stockholder who tenders his shares when he should not have – that is, someone who wrongly sells his shares for too little, due to misinformation from the company's officers or directors – could not have that "error" compensated with money damages. See, e.g., Gold Fields, 2004 WL 2710030, at *5 ("[T]hose persons who allegedly sold at an unfairly depressed price have an adequate remedy by way of an action for damages.") (quoting Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 60 (1975)).[10]

---

[10] Notably, if Calleros believes the tender-offer price is too low, he can decline to sell his shares. If others follow suit and too few stockholders tender their shares (meaning the subsequent merger is not completed), Calleros will not have been harmed. By contrast, if the merger does in fact proceed, he can avail himself of appraisal rights under Minnesota law, which would result in him receiving the "fair value" of his shares. See Minn. Stat. § 302A.473. It is hard to conceive how Calleros would be irreparably harmed under these circumstances.

It is perhaps not surprising, therefore, that courts routinely deny injunctive relief on claims like those pressed by Calleros due to the lack of irreparable harm.  See, e.g., La. Mun., 2012 WL 3263710, at *12; Davis, 801 F. Supp. 2d at 597 (no irreparable injury despite claim plaintiffs were "being asked to vote on – and have been mailed a recommendation to vote in favor of – an unfair transaction without all material information," as the court was "not persuaded that plaintiffs will not have an adequate remedy at law even if the Proposed Acquisition is ultimately approved at a price they later prove to be inadequate"); Leone v. King Pharm., Inc., No. 2:10-CV-230, 2010 WL 4736271, at *5 (E.D. Tenn. Nov. 16, 2010); Gold Fields, 2004 WL 2710030, at *4-5; Iavarone v. Raymond Keyes Assocs., Inc., 733 F. Supp. 727, 731-32 (S.D.N.Y. 1990) (denying preliminary injunction to plaintiff asserting that defendants violated Exchange Act "by making false statements of material facts and omitting to state material facts in connection with [a] proposed transaction," as plaintiff could not show money damages would not compensate him for "his [in]ability to make an informed choice with regard to the proposed transaction").  At bottom, "monetary damages are regularly used to satisfy claims alleging violations of the securities laws and [breach of] fiduciary duties," Ryan v. VHA Enters., Inc., No. 90 Civ. 2656, 1990 WL 58969, at *4 (S.D.N.Y. May 1, 1990), and the Court perceives no reason to stray from this principle here.

## III.    Other considerations

Although Calleros's failure to show irreparable harm is a sufficient reason to deny his Motion, the Court pauses to briefly address two additional Dataphase factors that counsel strongly against granting temporary injunctive relief.

First, the Court is "loathe to interfere in the dynamics of market transactions . . .

because of the risk that security holders will lose the opportunity to cash in their

investment at a substantial premium." David v. Human Genome Scis., Inc., Civ. No. 12-

965, 2012 WL 3061029, at *4 (D. Del. July 26, 2012) (internal quotation marks and

citations omitted). This risk is particularly acute where, as here, there is no competing

offer on the table. As noted in In re Netsmart Technologies, Inc. Shareholders Litigation,

924 A.2d 171, 208 (Del. Ch. 2007), "when this Court is asked to enjoin a transaction and

another higher-priced alternative is not immediately available, it has been appropriately

modest about playing games with other people's money." Accord, e.g., Leone, 2010 WL

4736271, at *5 (noting it is "imprudent to enjoin the only deal on the table, when the

stockholders can make that decision for themselves") (internal quotation marks and

citations omitted).

Granting injunctive relief here might very well scuttle the tender offer and deny

FSI shareholders from realizing a substantial gain on their shares, as the offered price

exceeds the closing price of FSI's stock the day before the transaction was announced by

more than 50%. "An injunction threatens much greater harm than benefit to the

shareholders of" FSI in this situation. Chalverus v. Bershad, No. CV094044848S, 2009

WL 3087205, at *9 (Conn. Super. Ct. Aug. 31, 2009); accord, e.g., In re Checkfree Corp.

Shareholders Litig., Civ. A. No. 3193-CC, 2007 WL 3262188, at *4 (Del. Ch. Nov. 1,

2007) ("Enjoining this $4.4 billion merger would impose significant costs on the

shareholders . . . in the form of lost time value of money and lost opportunity costs.

Moreover, the public interest requires an especially strong showing where a plaintiff

seeks to enjoin a premium transaction in the absence of a competing bid.").  Simply put, "the Court would do more harm by enjoining the proposed transaction than by letting it proceed."  Litwin v. OceanFreight, Inc., __ F. Supp. 2d __, 2011 WL 5223022, at *14 (S.D.N.Y. Nov. 2, 2011) (citation omitted).[11]

Second, the Court has serious doubts about the merits of Calleros's claims.  He recites a veritable laundry list of information supposedly omitted from the financial analysis and fairness opinion prepared by Barclays, which purportedly "foreclos[es] the possibility that [he] will be able to make an informed decision on whether to tender his shares."  (Pl. Mem. at 4-6.)  But the duty of disclosure "is not boundless," In re Checkfree, 2007 WL 3262188, at *2, and as noted above extends only to "material" information, that is, information "substantial[ly] likel[y] . . . a reasonable shareholder would consider . . . important in deciding how to vote."  TSC Indus., 426 U.S. at 449.  Here, it is difficult to understand how the allegedly omitted information is material when Calleros acknowledges that he has already concluded the tender-offer price "is unfair and grossly inadequate."  (Compl. ¶ 42.)  In other words, it does not appear that the information Calleros seeks would "alter the total mix of information [already] made available."  La. Mun., 2012 WL 3263710, at *8.

Moreover, Calleros's claims are predicated on his (alleged) entitlement to various categories of information including "the financial multiples observed for each of the

---

[11] Although Calleros has not alleged in the Complaint how many shares of FSI stock he owns, the Court strongly suspects that the number is small.  Yet, there are over 40 million shares of FSI stock issued and outstanding.  As in Litwin, the Court is particularly reluctant to grant injunctive relief imperiling a nine-figure corporate deal at the behest of a plaintiff with minor holdings in the corporation, thereby impacting thousands of other stockholders.

publicly traded companies" to which FSI was compared by Barclays; the "rationale [used] to select a . . . reference range" in Barclays's analysis; and "free cash flow," "forward price to earnings multiples," and other "specific inputs and data Barclays used" in forming its opinion. (Pl. Mem. at 4-6.) But a shareholder is not entitled to disclosures sufficient to make his own independent assessment of a stock's value. E.g., La. Mun., 2012 WL 3263710, at *8 (citation omitted); Skeen v. Jo Ann Stores, Inc., 750 A.2d 1170, 1174 (Del. 2000); In re Staples, Inc. Shareholders Litig., 792 A.2d 934, 954 (Del. Ch. 2001). Nor is he entitled to information merely because he believes it would be useful. La. Mun., 2012 WL 3263710, at *8 (citation omitted); Skeen, 750 A.2d at 1173. Rather, he is entitled only to a "fair summary" of a financial advisor's work. La. Mun., 2012 WL 3263710, at *8 ("All that is required regarding a fairness opinion is an 'adequate and fair summary' of the work resulting in the opinion.") (quoting In re Checkfree, 2007 WL 3262188, at *3). There is no mechanical "'checklist' of the sorts of things that must be disclosed relating to an investment bank fairness opinion," In re Checkfree, 2007 WL 3262188, at *3, and "courts have rejected disclosure claims based on the failure to disclose underlying details supporting a fairness opinion," La. Mun., 2012 WL 3263710, at *8. Notably, "[t]he fact that the financial advisors may have considered certain non-disclosed information does not alter this analysis." Id. (quoting In re Checkfree, 2007 WL 3262188, at *2); accord In re 3Com Shareholders Litig., Civ. A. No. 5067-CC, 2009 WL 5173804, at *6 (Del. Ch. Dec. 18, 2009) ("[Q]uibbles with a financial advisor's work simply cannot be the basis of a disclosure claim.").[12]

---

[12] Calleros also asserts that he is entitled to an explanation of the fees Barclays has earned and

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Calleros's Motion for Temporary Restraining Order (Doc. No. 23) is **DENIED**. It is further **ORDERED** that this action is **STAYED** pending resolution of the state-court actions.

Dated: September 18, 2012            s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge

---

will earn in connection with rendering its opinion, "so that FSI shareholders can fully assess the independence of the . . . purportedly independent financial advisor." Yet, the Recommendation Statement clearly discloses that FSI "has agreed to pay Barclays a transaction fee of $3,535,000, $750,000 of which became payable upon the delivery of Barclays' written opinion, and the remainder of which will become payable upon the consummation of the proposed transaction." (Monteverde Decl. Ex. A at 23.) It also discloses that Barclays has not performed work for FSI or TEL in the past but "may perform such services in the future, and would expect to receive customary fees for such services." (Id.) It is unclear what more Barclays could disclose.